CHRIST'S LEGACY CHURCH v. TRINITY GROUP ARCHITECTS



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:CHRIST'S LEGACY CHURCH v. TRINITY GROUP ARCHITECTS

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 CHRIST'S LEGACY CHURCH v. TRINITY GROUP ARCHITECTS
2018 OK CIV APP 31
Case Number: 116117
Decided: 03/19/2018
Mandate Issued: 04/18/2018
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2018 OK CIV APP 31, __ P.3d __

 

CHRIST'S LEGACY CHURCH, a/k/a CORNERSTONE CHURCH, Plaintiff/Appellant,
v.
TRINITY GROUP ARCHITECTS, INC., Defendant/Appellee,
and
VAN HOOSE CONSTRUCTION CO., and JAMES VAN HOOSE, Individually, Defendants.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE ROGER H. STUART, TRIAL JUDGE

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS

Dan L. Holloway, Marissa T. Osenbaugh, HOLLOWAY, BETHEA & OSENBAUGH, Oklahoma City, Oklahoma, for Plaintiff/Appellant

W. Michael Hill, Jeffrey Fields, Jennifer L. Struble, SECREST, HILL, BUTLER & SECREST, Tulsa, Oklahoma, for Defendant/Appellee

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 Plaintiff alleges it sustained damages as a result of Defendants' poor construction and design of its church. In this appeal, Plaintiff seeks review of the trial court's May 2012 order dismissing its negligence theory asserted against Defendant Trinity Group Architects, Inc. (Trinity), and of the trial court's January 2016 order granting summary judgment in favor of Trinity as to Plaintiff's breach of contract theory. Based on our review, we affirm in part, reverse in part, and remand for further proceedings.

PRELIMINARY ISSUE

¶2 As against Trinity, Plaintiff asserted theories of negligence and breach of contract. As stated, the trial court dismissed Plaintiff's negligence theory and granted summary judgment in favor of Trinity with regard to the remaining theory of breach of contract. In the prior appeal in this case (Case No. 114,682), Plaintiff appealed from this summary judgment ruling. However, the prior appeal was dismissed by the Oklahoma Supreme Court for lack of an appealable order. As explained by the Supreme Court in the prior appeal, the trial court's January 2016 order "grant[ed] summary judgment in favor of one defendant [i.e., Trinity], leaving claims remaining against the other [two] defendants, and which [did] not contain an express determination that there is no just reason for delay, and an express direction for the filing of judgment[.]" The Supreme Court explained that the trial court's January 2016 order was, therefore, "not appealable at this time," but that Plaintiff "will have the opportunity to seek review of the January 6, 2016 order in a timely and properly brought appeal from an order which is appealable pursuant to 12 O.S. § 994, or the judgment in the case."

¶3 Plaintiff and Defendant Van Hoose Construction Co. subsequently settled their claims and, in addition, Plaintiff dismissed its claims against Defendant James Van Hoose.[1] Plaintiff's "Dismissal With Prejudice" of James Van Hoose was filed on May 16, 2017, and, on the same date, the trial court issued its "Judgment" which states, in pertinent part, as follows:

Plaintiff and Defendant Van Hoose Construction Co. have informed the Court that they have reached an agreement as to the settlement of all issues herein. Judgment is rendered in the above-styled and numbered cause of action in favor of the Plaintiff and against [Van Hoose Construction Co.] only, in the total amount [of the agreed-upon settlement] . . . .

¶4 Plaintiff filed its Petition in Error in the present appeal within thirty days of this May 2017 settlement order. However, Trinity asserts on appeal in its Summary of Case as follows:

[Plaintiff] brings this matter before this Court as a Final Order granting summary judgment. The order submitted with the Petition in Error does not meet the definition of a final order under 12 O.S. § 953 as it failed to dispose of all claims and does not contain language making it a final appealable order as required by 12 O.S. § 994.[2]

¶5 As in the present case, in Patmon v. Block, 1993 OK 53, 851 P.2d 539, an order granting partial summary judgment was "memorialized . . . without an express statutorily authorized command for an immediate appeal." Id. ¶ 7 (emphasis omitted). However, the remaining "claim for relief" which was not adjudicated in the partial summary judgment order was later dismissed by the trial court. The Patmon Court explained that the order dismissing the remaining claim for relief "mark[ed] the disposition of all the claims and the settlement of all the issues among the parties," and, therefore, this later order constituted an appealable event. Id. (emphasis omitted).

¶6 Indeed, if some claims (or parties) are not adjudicated in an interlocutory, partial summary judgment ruling, a voluntary dismissal of the remaining claims (or parties) is sufficient to render the partial summary judgment ruling final and reviewable, and the filing of the dismissal triggers the commencement of appeal time.[3] Consequently, we conclude the dismissal of James Van Hoose, combined with the settlement order, both of which were filed on May 16, 2017, marks the disposition of all remaining claims and the settlement of all the issues among the parties. Consequently, the commencement of appeal time was triggered on this date, and Plaintiff has timely appealed.[4]

¶7 We therefore turn, in the remainder of this Opinion, to the issues raised by Plaintiff as to whether the May 2012 order dismissing Plaintiff's negligence theory against Trinity, and the January 2016 order granting summary judgment in favor of Trinity with regard to breach of contract, were properly entered.[5]

FACTS AND PROCEDURAL BACKGROUND AS TO TRINITY

¶8 Plaintiff originally filed suit against Defendants on January 31, 2011. However, the trial court dismissed Plaintiff's original petition without prejudice and, in January 2012, Plaintiff re-filed its petition. As stated above, Plaintiff asserted theories of breach of contract and negligence against Trinity. However, in March 2012, Trinity filed a motion to dismiss in which it argued, among other things, that Plaintiff's negligence theory is barred by the applicable two-year statute of limitations. Trinity pointed out that, in the petition filed in January 2012, Plaintiff alleged it "learned, in the late Spring of 2006," that Trinity had not fulfilled its contractual duties and was "proceeding with no intention to perform according to the contract and associated building plans, and instead . . . wholly failed to perform as contracted and in a good and workmanlike manner[.]"[6] Trinity asserted that because the original petition was not filed until January 2011 -- almost five years after Plaintiff "learned" of the above allegations -- the negligence theory was asserted well outside the two-year limitations period and is, therefore, barred.

¶9 In Plaintiff's response to the motion to dismiss, it asserted that a question of fact was nevertheless presented as to precisely when Plaintiff discovered Trinity's alleged negligence -- in particular, a question of fact remained as to when Plaintiff learned of Trinity's failure to ensure that the construction conformed to Trinity's design plans. However, in an order filed in May 2012, the trial court dismissed Plaintiff's negligence theory as barred by the applicable statute of limitations. The trial court granted Plaintiff "leave to amend [its] Petition in respect to this claim." Plaintiff did not file an amended petition.

¶10 In October 2015, Trinity filed a motion for summary judgment as to the remaining theory of breach of contract. Trinity correctly asserted that while a five-year statute of limitations applies to an allegation of breach of a written contract, a three-year limitations period applies to an alleged breach of any other contract, whether oral or implied. Trinity asserted that, in the present case, "[t]here is no written contract, only an oral agreement between the parties" and, thus, Plaintiff was required to file its petition within three years of either the discovery of the alleged breach in the late spring of 2006, or within three years of the completion of the construction project in February 2007. Thus, according to Trinity, because Plaintiff did not file its petition until 2011, its breach of contract theory is also barred.

¶11 The trial court granted Trinity's motion for summary judgment in the January 2016 order. Plaintiff appeals from both the dismissal[7] and summary judgment rulings entered in favor of Trinity.

STANDARD OF REVIEW

¶12 The standard of review for a district court's decision granting a motion to dismiss is de novo. Dani v. Miller, 2016 OK 35, ¶ 10, 374 P.3d 779. When reviewing a dismissal ruling, we "test the law that governs the claim, not the underlying facts." Id. (citations omitted). That is, we take as true all factual allegations made by the plaintiff in its petition, together with all reasonable inferences, and if relief is possible under any set of facts that can be gleaned from the petition, the motion to dismiss will be denied. Id. ¶¶ 10 & 11.

¶13 This appeal also concerns the trial court's order granting Trinity's motion for summary judgment.

Summary judgment is proper only if it appears to the court that there is no substantial controversy as to the material facts and that one of the parties is entitled to judgment as a matter of law. Only when the evidentiary materials eliminate all factual disputes relative to a question of law is summary judgment appropriate on that issue. The trial court's ruling on the legal issue is reviewed de novo as a question of law. However, an appellate court will reverse the grant of summary judgment if the materials submitted to the trial court indicate a substantial controversy exists as to any material fact.

Plano Petroleum, LLC v. GHK Exploration, L.P., 2011 OK 18, ¶ 6, 250 P.3d 328 (citations omitted) (internal quotation marks omitted). "When this Court reviews the trial court's grant of summary judgment, all inferences and conclusions drawn from the evidence must be viewed in the light most favorable to the party opposing the motion." Geyer Bros. Equip. Co. v. Standard Res., L.L.C., 2006 OK CIV APP 92, ¶ 7, 140 P.3d 563 (citation omitted).

ANALYSIS

I. Negligence

¶14 A two-year statute of limitations applies to Plaintiff's negligence theory. "The statute of limitations applicable to an action for negligence is found in 12 O.S. 2011 § 95(A)(3) and it provides that such a claim must be filed two (2) years after the cause of action shall have accrued." Calvert v. Swinford, 2016 OK 100, ¶ 6, 382 P.3d 1028 (footnote omitted).[8] As to the accrual date, "Oklahoma . . . follows the discovery rule allowing limitations in certain tort cases to be tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury." Calvert, ¶ 11 (footnote omitted). However, even when applying the discovery rule to this case, it is clear -- pursuant to Plaintiff's own allegations in its petition -- that the negligence theory is barred under the two-year statute of limitations.

¶15 As set forth above, Plaintiff alleges in its petition that it "learned, in the late Spring of 2006," that Trinity had not fulfilled its alleged duties and was "proceeding with no intention to perform according to the contract and associated building plans, and instead . . . wholly failed to perform as contracted and in a good and workmanlike manner[.]" The time period during which Plaintiff alleges it learned Trinity had "wholly failed" in this regard (i.e., the late spring of 2006) falls almost five years prior to the date in January 2011 that Plaintiff filed its original petition.[9]

¶16 As stated above, the trial court provided Plaintiff with the opportunity to amend its petition, but Plaintiff declined.[10] Even when applying the discovery rule to this case, as Plaintiff requests, and even when taking Plaintiff's allegations as true, Plaintiff knew or, in the exercise of reasonable diligence, should have known of the alleged injury caused by Trinity's acts or omissions more than two years prior to the filing of this action in January 2011. Therefore, we conclude the trial court did not err in dismissing Plaintiff's negligence theory asserted against Trinity as barred by the two-year statute of limitations.[11]

II. Breach of Contract

¶17 The parties agree that an agreement was reached between Trinity and Plaintiff, but they disagree as to whether or not their agreement should be categorized as a contract in writing for purposes of determining the applicable statute of limitations.[12] For example, Trinity states: "There is no written contract, only an oral agreement between the parties." Trinity bases this assertion on the fact that although it sent what it describes as a written proposal to Plaintiff, this document was never signed. Trinity states: "The written proposal from [Trinity] is only a proposal, and any acceptance was oral as the proposal is not signed -- thereby creating an oral contract."

¶18 Trinity's argument is motived by the fact that although the statute of limitations for "[a]n action upon any contract, agreement, or promise in writing" is five years, the limitations period is only three years for "[a]n action upon a contract express or implied not in writing[.]" 12 O.S. 2011 § 95(A)(1) & (2). That is, if an "instrument constitutes a written contract" then "the five-year statute of limitations applies; if not, the three-year statute of limitations applies." Harlow Pub. Co. v. Patrick, 1937 OK 579, ¶ 3, 72 P.2d 511 (citations omitted). Because the original petition was filed in January 2011, a three-year limitations period would reach back only to January 2008, after Plaintiff (pursuant to its own allegations) "learned" in the late spring of 2006 of the particular failures described above, and after it is undisputed Plaintiff moved into the new church and noticed deficiencies in the construction in 2007.[13] However, a five-year limitations period would reach back to January 2006, prior to all these occurrences.

¶19 In support of the assertion that the agreement constitutes a contract in writing, Plaintiff has attached to its response to the motion for summary judgment an affidavit of its representative -- David Brooks (Pastor Brooks) -- who states in his affidavit that he is "the Senior Pastor at Christ's Legacy Church" and that, "because of the recommendation of James Van Hoose, [I] contacted and met with Kevin Galliart, an architect who was employed by and who owned [Trinity], to design and provide all related architectural services for [Plaintiff's] new church building[.]" According to additional evidentiary materials attached to Plaintiff's response, in May 2004 Galliart sent a letter to Pastor Brooks which states:

I enjoyed meeting you and I appreciate you allowing me the opportunity to introduce [Trinity] to you. [Trinity] is a firm qualified and interested in performing architectural work for [Plaintiff]. I feel confident that no other firm combines the qualities of integrity and experience as effectively as [Trinity].

I have enclosed a proposal for your proposed new facility and information that will further introduce our firm . . . . Thank you again for this opportunity, and if you should have any questions or require any additional information please feel free to contact us at any time.

Thank you for your time and consideration.

Kevin Galliart, NCARB
Enclosure

¶20 The written "proposal" attached to this letter is entitled "Qualifications and Proposal." In addition to certain introductory information about Trinity, this document sets forth what are described as "the critical aspects of the project":

v Provide A/E services for the design and construction of a new 35,000 +/- sf. facility.

v Provide design/design development documents for owner review and approval, to determine potential square footage, costing.

v Provide construction documents for pricing, permit and construction as per attached scope of services.

v Help the owner with the negotiation with a selected contractor for cost effective timely construction of the project.

v Assist the owner during construction to ensure the project is in conformance with the construction documents and the project schedule.

v Help in the selection of critical design team members.

¶21 The document also sets forth, among other things, the following:

We propose a lump sum approach to be billed based upon percentage of completion of each phase. Based upon our understanding of the scope of services as outlined previously in this proposal our fees are as follows:

v Architectural $40,000.00
v Civil Engineering $15,255.00
v Structural Engineering $20,000.00
v Reimbursable expenses $ 1,500.00
Total A/E Fees: $76,755.00

. . . .

All fees for services are based on our understanding of the scope of services as outlined in this proposal. An invoice will be submitted monthly based upon completion of each phase. Additional services (i.e. services not described above) will be charged on a cost basis [at the listed hourly rates].

¶22 Pastor Brooks testified at his deposition that he did not sign this document; however, when presented with the document during his deposition, he observed: "I don't see any place for it to be signed." When questioned whether he had a written contract with Trinity, Pastor Brooks, referring to the above-quoted document, stated: "I have a paper that [Galliart] said, we agree to provide these following services, and he listed them including this, this, this, this and this with an amount on it. [Galliart] and I agreed that's what I would pay him for those services."[14]

¶23 In his affidavit, Pastor Brooks makes the following pertinent assertions, among others:

7. After discussion, [Galliart] presented a written offer to me which laid out in detail all of the services that he, acting for [Trinity], would provide, as well as the total fee to be paid to [Trinity] for designing and overseeing all of the related architectural services involved in the construction of the new church building.

8. I accepted his offer; and thereafter both I and [Galliart] spoke and acted in accord with the written details of the contract we both considered final and binding in all conversations and activities by us that were related to the construction of the new church building.

9. Thereafter, in conformance with the contract, [Galliart] designed the new church building and oversaw all of the related architectural services involved in the construction of the new church building, and periodically billed the church accordingly.

. . . .

16. I was recently deposed by [Galliart's] attorneys and was asked if there was ever a contract between the church and [Trinity].

17. I stated that my opinion was there was a written contract between the two parties which laid out in detail the services [Galliart] would provide and the payment that would be made by the church.

18. As a non-attorney, I did not understand the meaning and validity of the subsequent questioning which appeared to insist that the law requires every written contract to be signed by the parties before it could be enforceable.

19. I believed then, and still believe, that the church had a binding written contract with [Trinity].

¶24 In the present case, it appears from the evidentiary materials that neither party signed the proposal. However, the parties do not dispute that they entered into a binding agreement. Trinity merely argues that because its proposal was either orally accepted by Plaintiff, or accepted through subsequent performance, an oral or implied contract was created.

¶25 We disagree with Trinity that the mode of acceptance of a contract necessarily dictates whether that contract is or is not in writing for purposes of determining the applicable statute of limitations. By statute in Oklahoma, "[i]f a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are conformed to; but in other cases any reasonable and usual mode may be adopted." 15 O.S. 2011 § 68 (emphasis added). See also 15 O.S. 2011 § 70 ("Performance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal."). Thus, if a written proposal does not prescribe conditions concerning the communication of its acceptance, it may be accepted in "any reasonable and usual mode" under the circumstances -- the contract formed under such circumstances does not become an oral or implied contract merely because the acceptance is other than by signature.

¶26 As articulated in the Restatement, "[a]cceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." Restatement (Second) of Contracts § 50(1) (1981). As in Oklahoma, "[u]nless otherwise indicated by the language or the circumstances, an offer invites acceptance in any manner and by any medium reasonable in the circumstances." Id. § 30(2). Although "the offeror is entitled to insist on a particular mode of manifestation of assent" and "[t]he terms of the offer may limit acceptance to a particular mode," id. at cmt. a., the evidentiary materials in the present case disclose no such insistence or terms as to a particular mode of acceptance. Indeed, as articulated in the Restatement, the "form of acceptance" is unlikely "to affect the substance of the bargain" and "is often quite immaterial," id., and "[i]nsistence on a particular form of acceptance is unusual" -- "[o]ffers often make no express reference to the form of acceptance," id. at cmt. b. Even when offers do provide the form of acceptance, "[l]anguage referring to a particular mode of acceptance is often intended and understood as suggestion rather than limitation; the suggested mode is then authorized, but other modes are not precluded." Id. See also J. E. Keefe, Jr., Annotation, What Constitutes a Contract in Writing Within Statute of Limitations, 3 A.L.R.2d 809 (Originally published in 1949) (Stating, among other things, that "[a] written contract within the meaning of the statute of limitations is generally defined as one which in all its terms is in writing," and "[i]t has been observed that two persons may adopt a writing containing all the terms of a contract so that it would constitute a contract in writing, even though it is signed by neither.").

¶27 Thus, at the very least, disputes of material fact exist -- disputes which render summary judgment inappropriate -- as to whether the written proposal was accepted, and properly accepted, either orally or through performance.[15] Cf. Farmers' Produce Co. v. McAlester Storage & Comm'n Co., 1915 OK 530, ¶ 0, 150 P. 483 (Syllabus by the Court) ("Where there is no direction as to the mode of communicating the acceptance of a proposed contract, the acceptance may be accomplished" through "any reasonable and usual mode" "unless it can be fairly and reasonably inferred from the offer, or other prior communications, that some other means is expected, and that would be a question of fact to be determined by the jury[.]"). If the written proposal was properly accepted, and if it constitutes the parties' contract, then clearly their contract is in writing and the five-year statute of limitations applies.[16] As indicated above, a five-year statute of limitations reaches back in this case to January 2006, prior to any triggering events thus far uncovered.

¶28 For these reasons, we conclude summary judgment was inappropriately granted as to the breach of contract theory asserted against Trinity.

CONCLUSION

¶29 We conclude the trial court did not err in dismissing Plaintiff's negligence theory asserted against Trinity as barred by the two-year statute of limitations. However, we conclude summary judgment was inappropriately granted as to the breach of contract theory asserted against Trinity. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

¶30 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

RAPP, J., and GOODMAN, J., concur.

FOOTNOTES

[1] Plaintiff had also named Kevin Galliart, individually, as a defendant. However, Galliart was dismissed, apparently because, pursuant to Plaintiff's own allegations, his actions related to this case were undertaken only as an employee or representative of Trinity. Regardless, the dismissal of Galliart as an individual is not a contested issue on appeal.

[2] In addition, "[j]urisdictional inquiries into appellate or certiorari cognizance may be considered and re-examined, on motion or sua sponte, at any stage of the proceedings." Stites v. DUIT Const. Co., Inc., 1995 OK 69, ¶ 8, 903 P.2d 293 (emphasis omitted) (footnote omitted).

[3] See, e.g., Vance v. Fed. Nat. Mortg. Ass'n, 1999 OK 73, ¶ 5, 988 P.2d 1275 ("After the trial court refused to certify the summary-judgment order as immediately appealable, [the plaintiff] dismissed his remaining claims so as to impart finality to the otherwise interlocutory order."); Bivins v. State ex rel. Okla. Mem'l Hosp., 1996 OK 5, ¶ 5 n.15, 917 P.2d 456 (An interlocutory, partial summary judgment ruling is timely appealed when the remaining defendants in a case are later voluntarily dismissed by the plaintiff -- such a dismissal "marks the final disposition date for all the claims" and "constitutes the appealable event[.]" (emphasis omitted)); Blair v. Nat. Gas Anadarko Co., 2017 OK CIV APP 57, ¶ 1 n.2, 406 P.3d 580 ("Although the trial court's order did not resolve all issues between all parties, claims against the remaining defendants were subsequently dismissed without prejudice, making the order before us final in all respects." (citation omitted)); Waits v. Viersen Oil & Gas Co., 2015 OK CIV APP 95, ¶ 10, 361 P.3d 562 ("It is an increasingly common practice for plaintiffs to dismiss viable claims without prejudice in order to create appellate jurisdiction over an interlocutory decision that is not otherwise ripe for appeal." (footnote omitted)).

[4] We note that while the cases cited above involve the voluntary dismissal of remaining claims or parties, the present case involves both a voluntary dismissal of one defendant and also a settlement with another defendant. Our Supreme Court has long cautioned that "one cannot be heard to urge error in a proceeding leading to judgment or order which was entered by consent." Conterez v. O'Donnell, 2002 OK 67, ¶ 11 n.15, 58 P.3d 759 (emphasis omitted) (citing Wray v. Ferris, 1938 OK 649, 85 P.2d 402). In Conterez, the plaintiff sought to raise errors on appeal relating to a certain discovery dispute -- a dispute which led to the denial by the trial court of a request for sanctions by the plaintiff -- which arose earlier in the litigation with the same defendant with which the plaintiff later settled. The Supreme Court explained that the settlement with that defendant prevented the plaintiff from pursuing an appeal seeking review of the denial of sanctions. The Court explained: "A voluntarily released and satisfied judgment moots both an appeal that is lodged against it and against all nisi prius vacation process. This is so because any errors in its entry become abstract, hypothetical or academic and hence no longer available for the exercise of judicial cognizance." Conterez, ¶ 11 n.15 (emphasis omitted) (citations omitted). However, in the present appeal, Plaintiff does not attempt to raise any issues on appeal pertaining directly to the defendant (i.e., Van Hoose Construction Co.) with which it has settled. The issues it raises pertain only to Trinity, a party with which it has not reached a voluntarily released and satisfied judgment. Hence, the errors on appeal are not merely abstract or hypothetical. See also Chapman v. First Index, Inc., 796 F.3d 783, 786 (7th Cir. 2015) ("A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." (citation omitted)).

[5] In Martin v. Johnson, 1998 OK 127, 975 P.2d 889, the issue presented was whether the Supreme Court could properly review an interlocutory order entered prior to judgment that dismissed only one of multiple claims. The Martin Court explained:

We agree that the dismissal order was unappealable at the time of adjudication, because it disposed of only one of the many claims pled. However, when this Court reviews a judgment upon appeal it may reverse, vacate or modify any intermediate order involving the merits of the action, or any portion thereof. Intermediate or interlocutory orders anterior to judgment may thus be reviewed on appeal from the judgment.

Id. ¶ 18 (internal quotation marks omitted) (citations omitted).

[6] Plaintiff raised this assertion against all the defendants.

[7] Plaintiff's desire to appeal the dismissal of its negligence theory is made clear in its Petition in Error, where Plaintiff articulates the following issues in its Issues to be Raised on Appeal: "7. Whether Trinity was negligent in its standard of care and duty as to the design and drawings," and "8. Whether Trinity was negligent in its standard of care and duty as to the design and implementation of its proposal/contract by not properly overseeing the project . . . ."

[8] Title 12 O.S. 2011 § 95(A) provides, in pertinent part, as follows:

Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

. . . ;
3. Within two (2) years: An action for . . . injury to the rights of another, not arising on contract, and not hereinafter enumerated[.]

See also Lee v. Phillips & Lomax Agency, Inc., 2000 OK 65, 11 P.3d 632 (two-year statute of limitations under § 95 applicable to negligence theory); Marshall v. Fenton, Fenton, Smith, Reneau & Moon, P.C., 1995 OK 66, ¶ 6, 899 P.2d 621 (A two-year statute of limitations applies to tort actions.).

[9] We note that Plaintiff also does not dispute in its response to Trinity's motion for summary judgment that its representative -- Pastor David Brooks -- noticed the deficiencies in the construction in 2007, shortly after moving in to the new church building, and felt at that time "like he had [not] gotten the church [Plaintiff] had contracted for." Nevertheless, almost four years passed before the petition was filed.

[10] Plaintiff actually states in its petition that it learned in the late spring of 2006 that "Defendants" had wholly failed in the manner set forth above. If Plaintiff intended to refer to only some of the multiple Defendants, Plaintiff was provided with an opportunity to amend and change this portion of its petition but failed to do so. Moreover, even if Plaintiff had amended this language to refer, for example, only to the construction company, the discovery rule requires the exercise of reasonable diligence. Thus, if Plaintiff learned in 2006 that the construction company had wholly failed to construct a church consistent with the design plans, and its primary complaint regarding Trinity is that Trinity failed to ensure the design plans were properly executed by the construction company (and, when/if they were not, to notify Plaintiff), the statute of limitations would still have begun to run more than two years prior to the filing of this action in 2011.

[11] Plaintiff also states in its Petition in Error (i.e., in its Issues to be Raised on Appeal) that it seeks to raise the issue of "[w]hether the statute of limitations has [run] pursuant to 12 O.S. § 109." However, as Trinity accurately stated below, § 109 is a statute of repose, not a statute of limitations. Thus, even if a claim is timely brought within the ten-year period of repose under § 109, it is still subject to the applicable statute of limitations and stands barred if in violation of the limitations period. For example, the Oklahoma Supreme Court has explained:

Section 109 is a statute of repose; it may bar a cause of action that has not yet accrued. As such, the ten-year limit was incorrectly applied by the Court of Appeals to allow the [plaintiff] to bring suit. Obviously the action was brought within ten years after completion and is not interdicted by Section 109. But we must look to 12 O.S. [§ 95] to determine whether the tort action is barred by the applicable statute of limitations.

Samuel Roberts Noble Found., Inc. v. Vick, 1992 OK 140, ¶ 20, 840 P.2d 619 (citation omitted). In the present case, although Plaintiff has clearly brought this action within ten years of all dates relevant to this action, we must look to § 95 to determine whether the negligence theory is nevertheless barred by the applicable statute of limitations.

[12] We note that the contract at issue -- one for architectural services -- does not appear to fall under the Statute of Frauds in Oklahoma, see 15 O.S. Supp. 2013 § 136, and the parties do not argue otherwise.

[13] See n.9, supra.

[14] Trinity states in its motion for summary judgment that Pastor Brooks "repeatedly testified that there was no written contract between Plaintiff and [Trinity]." To the extent Pastor Brooks appears to have testified, at certain junctures, that there was no written contract between Plaintiff and Trinity, these responses constitute a legal conclusion. Moreover, although it appears Pastor Brooks was at certain points confused by the questioning and "did not understand the meaning and validity of [certain] questioning" (as he asserts in his affidavit, quoted below), the portion of his testimony quoted above is more representative of his overall testimony in this regard, especially when viewing the facts in the light most favorable to the nonmovant.

[15] For purposes of determining whether summary judgment was properly entered, we need not determine on this appeal whether it is an established fact that the parties' contract is in writing. Trinity asserts at one point in its motion for summary judgment that "[t]he terms of [Trinity's and Plaintiff's] agreement are wholly oral and therefore unrecorded, but can be inferred from circumstances surrounding the actions of the parties." The evidentiary materials reveal, at the very least, that a dispute of fact exists in this regard rendering summary judgment inappropriate.

[16] We note that our Supreme Court has stated that "evidence of a writing signed by one party and acceptance of the terms of the writing by the other is sufficient to bring the action within the statute of limitations for written contracts." Cortright v. City of Okla. City, 1997 OK 158, ¶ 8, 951 P.2d 93 (footnote omitted). Consistent with 15 O.S. § 68 and the Restatement, we do not take this statement from Cortright to mean that only the scenario presented in that case -- i.e., where at least one party has physically signed the contract -- is sufficient to bring the action within the statute of limitations for written contracts. It is nevertheless worth noting that Galliart's name is typed at the bottom of the cover letter to the written proposal, and no signature lines appear on the written proposal for a representative of either party to place a signature.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2006 OK CIV APP 92, 140 P.3d 563, GEYER BROTHERS EQUIPMENT CO. v. STANDARD RESOURCES, LLC.
Discussed
 2015 OK CIV APP 95, 361 P.3d 562, WAITS v. VIERSEN OIL & GAS CO.
Discussed
 2017 OK CIV APP 57, 406 P.3d 580, BLAIR v. NATURAL GAS ANADARKO COMPANY
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1992 OK 140, 840 P.2d 619, 63 OBJ 2931, Samuel Roberts Noble Foundation, Inc. v. Vick
Discussed
 1993 OK 53, 851 P.2d 539, 64 OBJ 1350, Patmon v. Block
Discussed
 1938 OK 649, 85 P.2d 402, 184 Okla. 132, WRAY v. FERRIS
Discussed
 1937 OK 579, 72 P.2d 511, 181 Okla. 83, HARLOW PUBL. CO. v. PATRICK
Discussed
 1915 OK 530, 150 P. 483, 48 Okla. 488, FARMERS' PRODUCE CO. v. McALESTER STORAGE & COMMISSION CO.
Discussed
 2002 OK 67, 58 P.3d 759, CONTEREZ v. O'DONNELL
Discussed
 1995 OK 66, 899 P.2d 621, 66 OBJ 2156, Marshall v. Fenton, Fenton, Smith, Reneau and Moon, P.C.
Discussed
 1995 OK 69, 903 P.2d 293, 66 OBJ 2117, Stites v. Duit Const. Co., Inc.
Discussed
 1996 OK 5, 917 P.2d 456, 67 OBJ 206, Bivins v. State ex rel. Okl. Mem. Hosp.
Discussed
 2011 OK 18, 250 P.3d 328, PLANO PETROLEUM, LLC v. GHK EXPLORATION, L.P.
Discussed
 2016 OK 35, 374 P.3d 779, DANI v. MILLER
Discussed
 2016 OK 100, 382 P.3d 1028, CALVERT v. SWINFORD
Discussed
 1997 OK 158, 951 P.2d 93, 69 OBJ 47, CORTRIGHT v. CITY OF OKLAHOMA CITY
Discussed
 1998 OK 127, 975 P.2d 889, 70 OBJ 34, Martin v. Johnson
Discussed
 1999 OK 73, 988 P.2d 1275, 70 OBJ 2674, Vance v. Federal National Mortgage Assn.
Discussed
 2000 OK 65, 11 P.3d 632, 71 OBJ 2359, LEE v. PHILLIPS & LOMAX AGENCY, INC.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 95, Limitation of Other Actions
Discussed at Length
 12 O.S. 109, Limitation of Action to Recover Damages Arising from Design, Planning or Construction of Improvement to Real Property
Cited
 12 O.S. 953, Final Order Defined
Cited
 12 O.S. 994, Procedure When There is More Than One Claim or Party - Final Judgment
Discussed
Title 15. Contracts
 Cite
Name
Level

 15 O.S. 136, Statute of Frauds
Cited
 15 O.S. 68, Acceptance - Mode of
Discussed
 15 O.S. 70, Acceptance of Proposal
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA